78 F.3d 587
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Raymond E. KING, Defendant-Appellant.
 No. 95-3232.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 28, 1996.
Decided Feb. 28, 1996.
 
 Before CUMMINGS, BAUER and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Appellant Raymond King pled guilty to one count of possessing cocaine base with intent to distribute, 21 U.S.C. § 841(b)(1)(B). The district court sentenced King to 92 months' imprisonment. King appealed and his counsel has moved to withdraw and filed an Anders brief.[1] We grant the motion to withdraw and dismiss the appeal.
 
 FACTS
 
 2
 On October 5, 1994, two Peoria police officers on patrol observed King and another individual walking together. The officers noticed that King was walking strangely; he had his left hand shoved deeply into his pants pocket, apparently balled into a fist. The officers followed the two men. Upon noticing the police, King quickened his pace. One of the officers called out to King to "wait up for a minute". King asked if he had done anything wrong, and the officer replied that he merely wanted to speak to him. As the officers approached, King suddenly began running. The officers gave chase, and they saw King throw down two baggies, which contained 21 grams of cocaine base (in 67 individually wrapped bundles). The officers caught King and arrested him.
 
 
 3
 King was charged with knowingly possessing more than five grams of cocaine base ("crack") with intent to distribute. He pled guilty to the offense on February 2, 1995. King's offense level was determined to be 25 and his criminal history category to be VI. The offense level calculation included a reduction of three points for acceptance of responsibility. The appropriate guideline range was 110-137 months, with a statutory minimum of 60 months. The government moved to depart downward on the basis of King's substantial assistance. See U.S.S.G. § 5K1.1,p.s. Judge McDade granted the government's motion and sentenced King to 92 months' imprisonment.
 
 ANALYSIS
 
 4
 Counsel claims that only two potential issues warrant mention. However, this court makes an independent examination of the record. If we concur with counsel's conclusion that there are no viable issues to appeal, we will grant the motion to withdraw and dismiss the appeal. See United States v. Kellum, 42 F.3d 1087, 1096 (7th Cir.1994).[2]
 
 
 5
 Our review begins with the guilty plea itself, and the record indicates the colloquy between the district judge and King satisfied Fed.R.Crim.P. 11's requirements. (See Record # 17, Transcript of February 27, 1995). We note that a good portion of the colloquy consisted entirely of yes/no answers by King, a practice this court has criticized. See United States v. Groll, 992 F.2d 755, 760 n. 7 (7th Cir.1993) (narrative responses preferred). However, there is nothing in the record to indicate the plea was anything but knowing and voluntary. Similarly, the sentencing hearing met the requirements of Fed.R.Crim.P. 32. (See Transcript of September 14, 1995).
 
 
 6
 We note that King objected to the lab report, which indicated the crack weighed 21 grams. (Record # 20). King argued that no attempt was made to specify the amount of actual cocaine base present in the chunks or specify the substances mixed with the cocaine base. (Id.) These arguments were properly rejected. The guidelines provide that: "Unless otherwise specified, the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." U.S.S.G. § 2D1.1, footnote. Because crack can only be made by combining cocaine hydrochloride with other substances (such as baking soda), see United States v. Booker, 70 F.3d 488, 490-92 (7th Cir.1995), the presence of other substances is expected.[3]
 
 
 7
 Counsel argues that the 100 to 1 sentencing disparity for crack versus cocaine violates King's right to equal protection and constitutes cruel and unusual punishment. Counsel is correct that this argument would be meritless, as this court has rejected all constitutional challenges to the 100 to 1 sentencing ratio. See United States v. Booker, 73 F.3d 706 (7th Cir.1996) (collecting cases). In his Rule 51 response, King argues that the Sentencing Commission has proposed amendments to the guidelines which would equalize the penalties for crack and cocaine. This argument has previously been rejected by this court, as the proposed amendments were rejected. See Booker, 73 F.3d 706.
 
 
 8
 Counsel also argues that King's criminal history was exaggerated because related cases were counted separately, it consisted largely of somewhat dated misdemeanors, and it primarily involved his long running series of domestic disputes with his girlfriend, Scotia Shorty. In addition, in his Rule 51 response King has argued that Judge McDade erroneously believed he had no authority to depart downward.[4]
 
 
 9
 King's criminal history points totaled 17, which included a two-point increase because he committed the instant offense while on parole. See U.S.S.G. § 4A1.1(d). A criminal history point total of 13 or more yields a criminal history category of VI. See U.S.S.G. Chpt. 5, Part A.
 
 
 10
 Counsel's argument that the crimes were "dated" fails. The guidelines provide that prior sentences are countable under § 4A1.1(b) if the prior sentence "was imposed within ten years of the defendant's commencement of the instant offense...." U.S.S.G. § 4A1.2(e)(2). King committed the instant offense on October 5, 1994, and his earliest sentence was imposed on January 17, 1985. Thus, all his prior sentences were properly counted. Counsel's argument that some of the earlier crimes may have been related is stronger. While not entirely clear from the Presentence Report, King's three convictions for unlawful use of weapons, criminal trespass, and battery seem to be related, pursuant to the criteria in U.S.S.G. § 4A1.2, comment. (n. 3). However, even if this were the case, his guideline range would not change because King's criminal history score would only decrease to 13, still within classification VI.
 
 The guidelines provide that:
 
 11
 There may be cases where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes. An example might include the case of a defendant with two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period. The court may conclude that the defendant's criminal history was significantly less serious than that of most defendants in the same criminal history category (Category II), and therefore consider a downward departure from the guidelines."
 
 
 12
 U.S.S.G. § 4A1.3, p.s. This court, however, has no jurisdiction to review a district court's discretionary refusal to depart downward from the guidelines. United States v. Covarrubias, 65 F.3d 1362, 1372 (7th Cir.1995). We may only determine whether the district court erroneously concluded it had no authority to depart. See generally United States v. Abbott, 30 F.3d 71, 72-3 (7th Cir.1994).
 
 
 13
 The district judge clearly indicated that he considered the somewhat unusual facets of the defendant's criminal history and would[5] have imposed a sentence at the bottom of the range because of it. (Transcript of September 14, 1995 at 27). The district judge noted, however, the violent nature of the previous crimes, that King had not learned from his errors, and that King had attempted to minimize his conduct and blame others. (Id. at 25-27). The district judge concluded that "I do not feel that it's justified to depart down from what was mentioned earlier." (Id. at 27). The district judge clearly understood that he had discretion to depart; he simply did not find King's situation compelling.
 
 
 14
 As we find no non-frivolous issues which warrant review, we GRANT THE MOTION TO WITHDRAW AND DISMISS THE APPEAL.
 
 
 
 [1]
 See Anders v. California, 386 U.S. 738 (1967). Per Circuit Rule 51(a), King was notified of his counsel's actions and given the opportunity to respond. King has done so, raising two issues which are addressed herein
 
 
 [2]
 We note at the outset that because King's trial counsel is also appellate counsel, ineffective assistance claims would be more appropriately raised in a collateral attack. We do not note any such potential claims in the record, however
 
 
 [3]
 The guidelines note: " 'cocaine base,' for purposes of this guideline, means 'crack.' 'Crack' is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form." U.S.S.G. § 2D1.1, footnote
 
 
 [4]
 King received a downward departure for substantial assistance. He argues that Judge Mcdade should have departed even further because King's criminal history was exaggerated
 
 
 [5]
 King was actually sentenced well below the guidelines range as a result of the government's motion for a downward departure for King's substantial assistance