ESCHBACH, Circuit Judge.
After Steven Otis’ conviction on drug charges, the district court imposed a longer sentence than that recommended by the applicable guideline range. Otis appeals this upward departure on three grounds: (1) he did not receive notice of the court’s intent to depart; (2) the circumstances did not provide a valid basis for an upward departure; and (3) the district court failed to give reasons for the extent of the upward departure. For the reasons stated below, we remand for resen-tencing.
I. Background
When law enforcement officers searched Steven Otis’ home, they found large quantities of marijuana and guns. Otis later pled guilty to conspiracy to distribute and to possess with intent to distribute marijuana, see 21 U.S.C. § 846, possession with intent to distribute marijuana, see 21 U.S.C. § 841, and using and carrying a firearm during a drug trafficking offense, see 18 U.S.C. § 924(c). The third charge was dismissed on the government’s motion based on Bailey v. United States, — U.S. —, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) (holding mere possession insufficient to convict of using a firearm during a drug trafficking offense), and Otis was convicted of the first two charges. After his arrest, Otis cooperated with police to gain evidence against his co-conspirator and supplier, Stephen Brenningmeyer. Apparently, Brenningmeyer was involved in a larger drug conspiracy known as the “English conspiracy,” through which he obtained his drugs and sold to others besides Otis. Brenningmeyer was arrested and, like Otis, agreed to cooperate with the police; however, he was subsequently shot, presumably by someone who discovered this cooperation.
At Otis’ sentencing, the district court found that there was insufficient evidence to show Otis had anything to do with the Brenningmeyer shooting, and thus refused to increase Otis’ sentence for obstruction of justice. It also found that Otis was not “technically” part of the larger “English” conspiracy. Based on these facts, Otis’ offense level was 25, which gave a sentencing range of 57-71 months. However, upon making this finding, the court stated its view that Otis’ crime
may well be more significant than that range would indicate. Granted that I have said there is not enough evidence to persuade me that Mr. Otis had anything to do *-1095 with Mr. Brenningmeyer’s shooting. Yon can’t get away from the fact that if you look at this operation as a whole, we’ve got guns, we’ve got shootings, we’ve got an operation covering two states.
Sent. Tr. at 47. Upon so stating, the court invited the government to make arguments as to an upward departure.
After arguments, the court decided to depart upward from the guidelines by two levels, resulting in a sentencing range of 70 to 87 months, and sentenced Otis to the 87 month maximum. The court’s reasons for departing included that Otis “was certainly part of one conspiracy which overlapped with other conspiracies which pretty well blanketed apparently Southern Illinois and parts of Kentucky with buying and selling marijuana.” Sent. Tr. at 51. The court also said that the shooting of Brenningmeyer served to show the “seriousness of this offense” and that Otis would be receiving a light sentence in comparison to similar cases without the upward departure. Otis now appeals his sentence claiming the court’s upward departure was error.
II. Notice
Otis first argues that he must be resentenced because the court gave him insufficient notice of its intent to depart from the guidelines. We agree. The district court must provide reasonable notice of its intent to depart, identifying the specific ground on which the court is contemplating departure. Burns v. United States, 501 U.S. 129, 111 S.Ct. 2182, 115 L.Ed.2d 128 (1991); United States v. Muzika, 986 F.2d 1050, 1055 (7th Cir.1998); see also United States v. Jackson, 32 F.3d 1101, 1105-06 (7th Cir.1994) (requiring reasonable notice that court intends to enhance sentence on previously unidentified ground). The defendant has a right to comment on sentencing matters and this right can be rendered meaningless through lack of notice. Burns, 501 U.S. at 135-39, 111 S.Ct. at 2186-87; see also Jackson, 32 F.3d at 1105.
This is especially true when the decision in question is a sua sponte departure under the Guidelines. Because the Guidelines place essentially no limit on the number of potential factors that may warrant a departure, ..., no one is in a position to guess when or on what grounds a district court might depart, much less to “comment” on such a possibility in a coherent way.
Burns, 501 U.S. at 136-37, 111 S.Ct. at 2186 (citation omitted).
The government does not contest that Otis did not receive the requisite notice. However, the government argues that Otis did not object to the lack of notice and there is no plain error to justify a remand. After the government made its argument (upon invitation by the court), defense counsel responded that there was “never any intimation” of the facts that formed the basis of this departure, and that “[c]ertainly some form of notice is required ... before this type of procedure is employed.” Despite these comments, Otis’ reply brief seems to concede the lack of objection. We question whether this concession was correct; the colloquy may have been sufficient to preserve the issue for review. See Jackson, 32 F.3d at 1107 n. 4, 1109-10 (applying harmless error standard, holding government to its burden of proof, in similar factual circumstances). However, it is unnecessary for us to decide the issue in this case.
Whether or not defendant properly preserved the issue is a moot point, because we find plain error. Plain error exists when there is an error which is clear or obvious and which affects substantial rights. See United States v. Olano, 507 U.S. 725, 732-36, 113 S.Ct. 1770, 1777-78, 123 L.Ed.2d 508 (1993). First, the court’s error — failing to give notice contrary to the unambiguous rule of Bums — was clear. Second, the error affected Otis’ substantial rights because it likely affected the outcome of the sentencing proceedings. See id. at 734-36, 113 S.Ct. at 1778. Because we are persuaded that the court’s upward departure was improper based only on its stated reasons, see our discussion below, we also must conclude that if Otis had the opportunity to make the same arguments to the district court that he made here, the result of his sentencing likely would have been different.
*-1094 III. Propriety of the Departure
Otis next argues that the district court’s stated grounds do not provide a valid reason for departure. He also argues that the district court improperly based the departure on the acts of conspiracies in which he was not involved. We review the district court’s decision to depart for abuse of discretion. Koon v. United States, — U.S.—, —, 116 S.Ct. 2035, 2043, 135 L.Ed.2d 392 (1996). We accept the district court’s findings of fact supporting the departure unless clearly erroneous. United States v. Boula, 932 F.2d 651, 655 (7th Cir.1991).
“The Commission intends the sentencing courts to treat each guideline as carving out a ‘heartland,’ a set of typical cases embodying the conduct that each guideline describes.” U.S.S.6. ch. 1, pt. A, intro, comment. 4(b), cited in Koon, — U.S. at—, 116 S.Ct. at 2044. Departures from the Sentencing Guidelines are permitted only in cases that involve factors for which the guidelines do not adequately account, either because not considered at all or because the factor is present in an exceptional way. See, generally, Koon, — U.S. at—, 116 S.Ct. at 2044-46. The factor supporting departure must be sufficiently unusual either in type or degree “to take the ease out of the Guideline’s heartland.” Id. — U.S. at—, 116 S.Ct. at 2045. If the district court departs without making a finding that there is something about the ease that the guidelines did not adequately consider, it abuses its discretion. See id. —— U.S. at —, 116 S.Ct. at 2046 (“Before a departure is permitted, certain aspects of the ease must be found unusual enough for it to fall outside the heartland of cases in the Guideline.”); United States v: Carey, 895 F.2d 318, 323-24 (7th Cir.1990) (holding district court erred by not making requisite findings — “that ‘unusual circumstances’ exist and the circumstance is ‘present to a degree substantially in excess of that which is ordinarily involved’ ” — to warrant departure from Guidelines). While the court in this case explained its reasons for departing, it did not explain why the factors it relied on made the case atypical and thus outside the guidelines’ heartland. Without this explanation, the court’s upward departure cannot stand.
The judge cited three grounds for the upward departure: (1) the geographic scope of the crime; (2) the violence connected with the crime; and, (3) that the sentence undervalued the seriousness of the crime as compared to other cases. We address the last first. The Supreme Court has said that “[wjhether a given factor is present to a degree not adequately considered by the Commission, or whether a discouraged factor nonetheless justifies departure because it is present in some unusual or exceptional way, are matters determined in large part by comparison .with the facts of other Guidelines cases.” Koon, — U.S. at ——, 116 S.Ct. at 2047. However, this does not justify departure based on a eonclusory statement that a sentence seems comparatively light. The district court must identify some aspect of the case that is unusual or exceptional. If departures are allowed based on a blanket assertion that the sentence seems comparatively light, the intent of the guidelines to reduce sentencing disparity by confining judicial discretion would be eviscerated. The question here is whether the first two grounds cited by the district court — geographic scope and violence — were present in an unusual or exceptional way. Because the judge made no finding that these factors existed to a degree not adequately taken into account by the Guidelines, we must remand for resentencing.
First, the judge based the upward departure in part on the fact that the conspiracy covered two states.[1] However, he made no finding that the geographic scope was atypical and thus not within the scope of the routine application of the guidelines. The mere fact that the conspiracy encompassed two states is insufficient. Congress specifically has found that “[a] major portion of the traffic in controlled substances flows through interstate and foreign commerce.” 21 U.S.C. § 801(3) (Congressional findings and declara *-1093 tions). See also United, States v. Genao, 79 F.3d 1333, 1335-36 (2d Cir.1996). Thus, simply having a multistate scope does not bring thé case out of the guidelines’ heartland. Although it may be that in some cases the geographic scope may be so large as to make the case atypical and thus justify a departure, there is no indication that this is such a case. While the court cited geographic scope as a reason for departure, it did not explain how the scope of the instant case was exceptional in a way that brought it outside the set of typical cases for which the guidelines were designed.
Second, the court pointed to violence as a factor justifying departure. Unfortunately, the court again did not explain how this factor brought the case outside the set of typical cases described by the guidelines. Instead, the sentencing transcript leaves us with nothing more than the court’s general impression that Otis was associated with violence. The court stated that an upward departure was appropriate because “if you look at this operation as a whole, we’ve got guns, we’ve got shootings....” We note, with reference to the guns, that the court duly enhanced Otis’ sentence for gun possession. Because specifically provided for in the guidelines, gun possession alone normally would not justify a departure. Although, some eases may merit a departure based on the number or kinds of guns possessed, see U.S.S.G. § 5K2.17, the court made no finding to this effect in the instant case.
Death or bodily injury are also factors that may justify an upward departure. U.S.S.G. §§ 5K2.1, 5K2.2. However, the judge made no finding to indicate that Otis is accountable for any deaths or bodily injury. At oral argument, the government pinpointed the shooting of Brenningmeyer as the exceptional aspect of this case that warranted departure. However, the judge specifically found that there was insufficient evidence to connect Otis to that shooting. Thus, Brenning-meyer’s shooting cannot form the basis for the upward departure. Except for the shooting of Brenningmeyer, the district court refers to no other specific instances of death or bodily injury that would justify departure.
Any other deaths or injury, judging from the presentenee report (“PSR”), must stem from the “overlapping” English conspiracy. The court found that Otis knew Brenning-meyer was buying from someone and selling to others, and thus held Otis accountable for the violent acts of the English conspiracy. But mere awareness or foreseeability is insufficient. “To be considered as relevant conduct, such acts also must be in furtherance of ‘jointly undertaken criminal activity.’ ” United States v. McDuffy, 90 F.3d 233, 236 (7th Cir.1996). The district court did not find that Otis had “jointly undertaken” criminal activity with anyone but Brenningmeyer. To the contrary, the court stated: “[a]s I read [the PSR], there is nothing in there that directly connects the defendant to this Mr. English_” Sent. Tr. at 4. In discussing the paragraphs of the PSR describing the violence associated with the English conspiracy — the only paragraphs which reference any violence other than the shooting of Bren-ningmeyer — the court agreed that the information in those paragraphs does not “impact at all on the sentence,” but instead “just give[s] a background, an interesting background of what was obviously a rather large marijuana operation.” Id.
Thus, the court’s basis for departure seems to be nothing more than mere associations with, violence. However, drugs typically are associated with violence. See United States v. Wyatt, 102 F.3d 241, 248 (7th Cir.1996) (“[I]t is widely acknowledged that guns are ‘tools’ of the trade in the drug business.”) (internal quotation marks omitted). Such general associations are insufficient to take the case out of the guidelines’ heartland. The court simply failed to explain what was exceptional about this case. It pointed to nothing as being inadequately considered through application of the guidelines.[2]
Conclusion
Upon reading the sentencing transcript, it is obvious that the judge in this case was conscientious in his fact finding. But if a court is going to depart, it must indicate *-1092 what aspect of the case is unusual or exceptional such that it is not adequately accounted for by routine application of the guidelines. Thus, for the reasons stated above, we Vaoate Otis’ sentence and Remand for re-sentencing.

. The court stated: "He was certainly a part of one conspiracy which overlapped with other conspiracies which pretty well blanketed apparently Southem Illinois and parts of Kentucky with buying and selling marijuana.” Sent. Tr. at 51.

. Because we remand for resentencing based on the impropriety of the upward departure, we do not reach defendant’s challenge to the extent of the departure.